JOSEPH LUTHNER, PLAINTIFF-RESPONDENT, v. ALICE IRENE LUTHNER, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 19, 1962—Decided March 26, 1962.

Before Judges CONFORD, GAULKIN and KILKENNY.

*Mr. George Warren* argued the cause for appellant.

*Mr. Robert E. Pollan* argued the cause for respondent (*Mr. Michael Andrus,* attorney).

The opinion of the court was delivered by
CONFORD, S. J. A. D.  The Chancery Division awarded the plaintiff husband a divorce on the ground of the defendant's adultery, and denied her counterclaim for divorce advanced on the ground of alleged extreme cruelty by the plaintiff. The latter determination is not appealed.  The contest is solely on the issue of adultery.

The parties were married in 1955.  Defendant had a child by a prior marriage which plaintiff adopted.  In 1956 a child of the parties was born, and shortly thereafter defendant developed mental illness.  She was a patient at the state hospital at Greystone Park for a period of time in 1957 and was admitted there twice in 1958, the second hospitalization lasting until May 24, 1959, when she was permitted to return home on convalescent leave.  The record does not afford us any information as to the specific nature of defendant's mental ailment, but it appears she intermittently had outside employment.  The parties had frequent disagreements and arguments, undoubtedly due both to defendant's unstable condition and to impatience with her by plaintiff, possibly accentuated by incidents of drinking on his part.

Plaintiff conceded that the first two months that defendant was home in 1959 she was "all right," but he testified that they "couldn't live together" thereafter because of "her illness and arguing and all."  On October 19, 1959 plaintiff left the defendant, having previously brought the younger child to stay with his parents.  He went to live there himself, making no provision for support or maintenance of the defendant until he was subsequently required to do so by court order.  There is no dispute that he was in her company only once thereafter, when she brought the other child to

his parents' home. There were no sexual relations between them at any time after October 19, 1959. He testified such relations had ceased early in August, but her testimony was that they continued until he left in October.

Dr. Louis Fraulo, the family doctor of defendant's family, the Aitkens, testified as a witness called by plaintiff that he performed an operation on defendant at Beth Israel Hospital in Passaic on January 13, 1960 for a suspected right ovarian cyst, but that the surgery revealed not only the cyst but also a right tubal pregnancy. The fallopian tube contained a fetal mass about one inch in diameter. On direct examination the doctor stated that the pregnancy "could have been anywhere between two weeks to eight weeks duration." He said that such an abnormal pregnancy will usually rupture the tube if it goes beyond eight weeks. It was his opinion that if plaintiff had no access to his wife since October 1959 it was "not probable" that the pregnancy was "caused" by him. On cross-examination, however, when asked if there were not a possibility that if there were relations between the parties in October this could have been the cause of the pregnancy, he said: "It is a difficult question to answer." He explained that "usually we know that a tubal pregnancy doesn't go beyond twelve weeks" without rupturing, but "usually it will rupture within the eight weeks." He summarized: "So therefore, it's difficult to say, shall we say, that it is possible that a pregnancy could reach three months, or twelve weeks without rupturing the tube, although it is not usually the case." On redirect examination he stated: "I can only tell you [the pregnancy] was anywhere between two weeks and twelve weeks. Let's put it that way."

Defendant testified she had no sexual relations with any other man. There was no proof of any association of any kind between defendant and any man other than her husband, either prior or subsequent to the separation of the parties.

Plaintiff stresses, in addition to the medical testimony, that the hospital record reveals information provided by defendant that her last menstrual period prior to the operation was subsequent to Christmas 1959, and he argues that we may take judicial notice this shows the pregnancy commenced thereafter. Not so. The literature shows it to be not uncommon for menstruation to persist during pregnancy. See *Schatkin, Disputed Paternity Proceedings* (3d ed. 1953), *p.* 539. Moreover, Dr. Fraulo knew of the history of defendant's menstruation after Christmas and nevertheless conceded the possibility of a 12 weeks' pregnancy in this case. He testified to a history by defendant of irregular menstruation for a period of six months.

In his oral conclusions finding defendant guilty of the matrimonial offense charged, the trial judge stated it was plaintiff's burden to establish the adultery "by a fair preponderance of the evidence." But he added: "And the court has to be convinced that such a thing happened." He said, "the probability * * * this pregnancy happened because * * * these two might have cohabited together is just a little bit straining the thing * * * too far." He concluded that there was adultery "with some person unknown."

Defendant urges that the trial court erred in applying the criterion of the fair preponderance of the evidence to find her guilty of adultery. She argues that it was essential that proof of inclination and opportunity, here absent, be adduced where the reliance was upon circumstantial evidence. She cites several verbal formulas which have been employed by the courts in describing the burden of proving adultery, especially where the accused is the wife, all reflecting criteria more stringent than that of the fair preponderance of the evidence. Among these, and particularly stressed at oral argument, was the standard of "proof beyond a reasonable doubt," approved in conjunction with other standard-of-proof formulas, hereinafter discussed, by the Court of Errors and Appeals in *Berckmans v. Berckmans,* 17 *N. J. Eq.* 453, 454 (*E. & A.* 1864), affirming 16 *N. J. Eq.* 122 (*Ch.* 1863), and

intermittently reiterated in the cases since. See, *e. g.,* *Gilson v. Gilson,* 116 *N. J. Eq.* 556, 562 (*E. & A.* 1934); *Wagner v. Wagner,* 140 *N. J. Eq.* 213, 214 (*E. & A.* 1947).

The language of the Chancellor in the *Berckmans* case, rather than that of the Court of Errors and Appeals in affirming the decree denying judgment *nisi,* is more frequently cited in our later adultery opinions involving circumstantial evidence. He said (16 *N. J. Eq.,* at *p.* 140):

"To establish the existence of adultery, the circumstances must be such as would lead the guarded discretion of a reasonable and just man to that conclusion. It must not be a rash and intemperate judgment, moving upon appearances that are equally capable of two interpretations. * * * Where the conduct of a party admits of two interpretations, equally consistent with probability, the one involving guilt and the other consistent with innocence, the rule of evidence as well as the dictates of justice, require that the interpretation should be favorable to innocence."

See also *Hurtzig v. Hurtzig,* 44 *N. J. Eq.* 329 (*Ch.* 1888), affirmed o. b. 45 *N. J. Eq.* 869 (*E. & A.* 1889).

The leading post-1948 case relevant to the discussion is *Eberhard v. Eberhard,* 4 *N. J.* 535 (1950). In granting a judgment of divorce for adultery, and reversing a contrary trial determination, Mr. Justice Case's opinion for the majority significantly avoided allusion to the test of guilt beyond a reasonable doubt, and quoted with approval the Chancellor's language in *Berckmans,* notwithstanding the incriminating proofs as arrayed in the *Eberhard* opinion might arguably have satisfied the more stringent criterion (4 *N. J.,* at *p.* 545). The opinion went on to add: "The rule is still alive and pertinent." *Ibid. Cf. Bingenheimer v. Bingenheimer,* 2 *N. J.* 284 (1949). There is no mention of the criterion of proof beyond a reasonable doubt in our decisions since *Eberhard.* See *Egnozzi v. Egnozzi,* 17 *N. J. Super.* 433 (*App. Div.* 1952), where the court added the qualification of the *Eberhard*-approved rule that if the adjudication of adultery on circumstantial evidence operated to stigmatize the legitimacy of a child born in wedlock, the proof must be such as to leave "no possible escape" from

such a conclusion (at *p.* 437) ; see also *Judkins v. Judkins,* 22 *N. J. Super.* 516, 543 *(Ch. Div.* 1952) ; *Coven v. Coven,* 64 *N. J. Super.* 6 *(App. Div.* 1960).

We are satisfied that the rule is and should be as restated in *Eberhard,* free from the stringency of the "beyond a reasonable doubt" criterion. A divorce action is civil, not criminal, in nature and effect. An aggrieved spouse is entitled to a divorce on the statutory ground of adultery where his proofs, although circumstantial, as almost always they must be, overcome the still formidable barrier of the *Eberhard-Berckmans* rule above quoted.

We are satisfied, however, that plaintiff did not meet the requisite proof burden in this case and that it was error to hold that defendant was guilty of adultery on the showing here established. The trial judge did not find for plaintiff on the disputed factual issue as to whether marital relations continued during the entire period of cohabitation. There is a presumption that marital intercourse is practiced between competent spouses living in the same house. *Egnozzi v. Egnozzi, supra* (17 *N. J. Super.,* at *p.* 438). The medical witness for plaintiff ultimately conceded that the tubal pregnancy could have been of 12 weeks' duration, which would bring the possibility of conception very close to the cohabitation period. The probabilities of the matter are not to be resolved solely on the basis of cold medical statistics, but in the tempering light of the absence of the slightest indication in this record that this unfortunate woman had any amorous association at any time with any other man. In that state of the proofs she should not be assumed to be of adulterous proclivity. The case as a whole does not lead the guarded judgment of this court to the conclusion of defendant's guilt, the combination of the matters proven and not proven producing, in our view, a situation as consistent with the hypothesis of defendant's innocence as with that of her guilt. See *Egnozzi v. Egnozzi, supra.*

We do not pass upon defendant's added argument that plaintiff should be denied relief for his alleged unclean

hands in abandoning his wife under the circumstances here shown. The point was not raised nor the defense pleaded below; the plaintiff therefore did not have a fair opportunity to meet it by proof on appropriate notice of the issue.

Defendant asks counsel fee and costs on this appeal. She is allowed her actual disbursements in prosecution of the appeal and a counsel fee of $400.

Judgment reversed.